JOSÉ IVÁN TORRES ET ALS., demandantes y recurrentes, *v.* ESTADO LIBRE ASOCIADO DE PUERTO RICO ET ALS., demandados y recurridos.

*Número:* RE-91-41 *Resuelto:* 8 de junio de 1992

642

*Miguel A. Montalvo, Miguel Clar Reyes* y *Carlos Carrasquillo*, abogados del recurrente; *Jorge E. Pérez Díaz, Procurador General,* y *María Adaljisa Dávila, Procuradora General Auxiliar,* abogados del Estado Libre Asociado.

EL JUEZ PRESIDENTE SEÑOR ANDRÉU GARCÍA emitió la opinión del Tribunal.

La controversia presentada a nuestra consideración se reduce a determinar si el requisito de notificación contenido en una póliza de seguros del tipo de *reclamaciones hechas (claims made)* contraviene alguna política del Estado y, en específico, el mandato legislativo que exige a los médicos el mantenimiento y la continuidad de una póliza de responsabilidad profesional. Con el fin de llegar a una determinación es necesario aclarar algunos conceptos generales en el campo del Derecho de Seguros.

# I

Mediante sentencia parcial, el tribunal de instancia, Sala de Aguadilla, declaró con lugar la moción de sentencia sumaria presentada por una de las partes demandadas, la Corporación Insular de Seguros, desestimando la reclamación en cuanto a esta parte. Al conceder la razón a la referida corporación, el tribunal concluyó que, por ser las pólizas en controversia del tipo de "reclamaciones hechas" o *claims made*, constituye un requisito indispensable notificar la reclamación a la compañía aseguradora dentro del período de vigencia de la póliza, lo cual no fue hecho en este caso.[1]

Como consecuencia de la mencionada sentencia, recurre ante nos la parte demandante señalando que erró el tribunal de instancia al declarar con lugar la moción de sentencia sumaria y desestimar la demanda en relación con la Corporación Insular de Seguros. Aduce que el tipo de cubierta provisto por esta clase de pólizas atenta contra la política pública del Estado.

Las pólizas de responsabilidad profesional emitidas por la mencionada corporación a favor de los médicos codemandados son las siguientes:[2]

"(a) Póliza Núm. PLI 04533, "Claims Made", expedida a favor del Dr. José R. Rodríguez Rodríguez; con período de vigencia de 8 de noviembre de 1989 y con fecha de retroactividad a 8 de noviembre de 1986; *dicha póliza fue cancelada, siendo efectiva dicha cancelación a 6 de marzo de 1989 ... .*
(b) Póliza Núm. PLI 01881, "Claims Made", expedida a favor del Dr. Dagoberto Martínez Maldonado; con período de vigencia

---

[1] El juez de instancia determinó que la Corporación Insular de Seguros fue notificada con copia del emplazamiento y de la demanda el 19 de junio de 1989. Todas las pólizas emitidas en el presente caso fueron canceladas antes de la referida fecha, por lo tanto, según el tribunal, no existe cubierta bajo ninguna de las pólizas concernidas.

[2] Según se desprende de la sentencia dictada por el juez de instancia, Hon. Antonio R. Barceló.

de 6 de junio de 1988 a 6 de junio de 1989 y con fecha de retroactividad a 6 de junio de 1986; *dicha póliza fue cancelada, siendo efectiva dicha cancelación a 5 de julio de 1988* ... .

(d) Póliza Núm. RES 128389 "Claims Made", expedida a favor del Dr. Pedro J. Martínez Collazo; con período de vigencia de 5 de agosto de 1987 a 5 de agosto de 1988 y con fecha de retroactividad a 5 de agosto de 1986; *dicha póliza fue cancelada siendo efectiva dicha cancelación a 11 de marzo de 1987* ... . (Énfasis en el original.) Apéndice, págs. 4–5.

Motivó la cancelación de estas pólizas la falta de pago de las primas convenidas.

De la solicitud de revisión presentada por los demandantes recurrentes surge que se enmendó por primera vez la demanda presentada originalmente para incluir a la Corporación Insular de Seguros como parte demandada el 30 de septiembre de 1988, es decir, antes del período de vigencia de la Póliza Núm. PLI 04533, expedida a favor del codemandado, Dr. José R. Rodríguez. Sin embargo, esta demanda fue enmendada nuevamente el 1ro de marzo de 1989, ya vigente la póliza. A pesar de la presentación de la demanda original y las dos demandas enmendadas, la mencionada aseguradora fue notificada, *por primera vez de dicha reclamación,* cuando fue emplazada con copia de la demanda; esto es, ciento cinco *(105) días después de la cancelación de la póliza.* A la luz de lo anterior, ordenamos a los recurridos a que mostraran causa por la cual no debía revocarse parcialmente la sentencia dictada y disponer la continuación de los procedimientos en contra de la Corporación Insular de Seguros al amparo de la mencionada póliza. La parte recurrida efectivamente ha comparecido, por lo cual nos encontramos en posición de resolver.

## II

 Una póliza de responsabilidad profesional puede ser, de acuerdo con sus términos, de "ocurrencia"[3] (*occurrence policy*) o de "descubrimiento" (*discovery policy*), comúnmente conocida en. inglés como *claims made policy*. 11 *Couch on Insurance 2d (Ed. rev.)* Sec. 44:256 (1982). La diferencia entre ambas pólizas estriba en que la primera protege al asegurado de responsabilidad por cualquier *acto u omisión negligente incurrido durante el período de vigencia de la póliza*, independientemente del momento en que se hace la reclamación; mientras que la última protege al asegurado sólo en contra de las *reclamaciones hechas y traídas a la atención de la aseguradora durante dicho período de vigencia. Saavedra v. Joyerías Gordon, Inc.*, 120 D.P.R. 360 (1988); 7A *Appleman, Insurance Law and Practice* Sec. 4503 (1992); *St. Paul Fire & Marine Ins. Co. v. Barry*, 438 U.S. 531 (1978); *Stine v. Continental Cas. Co.*, 349 N.W.2d 127 (1984); *Zuckerman v. National Union Fire Ins. Co.*, 476 A.2d 820 (1984); *Gulf Ins. Co. v. Dolan, Fertig and Curtis*, 433 So. 2d 512 (1983); *U.S. v. A.C. Strip*, 868 F.2d 181 (6to Cir.1989).

> Notice within an occurrence policy is not the critical and distinguishing feature of that policy type. Occurrence policies are built around an insurer who is liable for the insured's malpractice, no matter when discovered, so long as the malpractice occurred within the time confines of the policy period. Coverage depends on when the negligent act or omission occurred and not when the claim was asserted. The occurrence insurer, then, is faced with a "tail" that extends beyond the policy period

---

[3] En *Albany Ins. Co. v. Cía Des. Comercial P.R.*, 125 D.P.R. 421 (1990), tradujimos del idioma inglés al vernáculo el vocablo *occurrence* como "siniestro". A la vez, definimos dicho concepto como " 'la manifestación concreta del riesgo asegurado, que produce unos daños garantizados en la póliza hasta determinada cuantía' ". Íd., pág. 427. A los fines de la discusión del problema en este caso, utilizaremos la palabra "ocurrencia" como traducción de *occurrence* al denominar tal tipo de pólizas, por razón de que así es que comúnmente se les denomina en el campo de seguros en Puerto Rico.

itself. This "tail" is the lapse of time between the date of the error (within the policy period) and the time when a claim is made against the insured. The giving of notice is only a condition of the policy, and in no manner is it an extension of coverage itself. It does not matter when the insurer is notified of the claim by the insured, so long as the notification is within a reasonable time and so long as the negligent act or omission occurred within the policy period itself.

Claims-made policies, likewise, require that notification to the insurer be within a reasonable time. Critically, however, claims-made policies require that that notice be given during the policy period itself. When an insured becomes aware of any event that could result in liability, then it must give notice to the insurer, and that notice must be given "within a reasonable time" or "as soon as practicable" —at all times, however, during the policy period. (Énfasis suprimido.) *Gulf Ins. Co. v. Dolan, Fertig and Curtis*, supra, pág. 515.

Así, pues, la distinción principal entre la póliza de ocurrencia y la póliza *claims made* consiste en la diferencia entre el riesgo asegurado por una y por la otra.

El riesgo asegurado por la póliza de ocurrencia *es el siniestro en sí*, esto es, "la manifestación concreta del riesgo asegurado" que produce el daño garantizado por la póliza. Véase *Albany Ins. Co. v. Cía Des. Comercial P.R.*, 125 D.P.R. 421, 429 esc. 3 (1990). Una vez el siniestro tiene lugar, entra en vigor la cubierta provista por tal póliza, aun cuando la reclamación sea hecha después de su período de vigencia. Por el contrario, la *notificación de la reclamación a la aseguradora* constituye el evento y riesgo asegurados por la póliza de *claims made*, independientemente de la fecha del siniestro. S. Kroll, *The Professional Liability Policy "Claims Made"*, 13 (Núm. 3) Forum 842, 843 (1978).

Así pues, la cubierta bajo una póliza tipo *claims made* depende de que se presente la notificación a la aseguradora dentro del término de vigencia de la póliza o dentro de

cualquier otro término que puedan haber convenido las partes después de su expiración.(⁴)

## III

 Las pólizas de "reclamaciones hechas" o *claims made* son de origen relativamente reciente y fueron desarrolladas principalmente teniendo en cuenta aquellas situaciones en las cuales es difícil precisar el momento en que ha ocurrido un error, omisión o acto negligente. S. Kroll, *"Claims Made"—Industry's Alternative: "Pay as You Go", Products Liability Insurance*, 637 (Núm. 637) Ins. L.J. 63, 64 (1976). En el caso de una póliza *claims-made*, la cual tiene como objetivo el asegurar responsabilidad profesional, no tiene gran efecto en la cubierta de la póliza el hecho de que un error u omisión negligente haya podido ser ocultado discretamente o haya podido permanecer latente y sin descubrirse por un largo período de tiempo. *Breaux v. St. Paul Fire & Marine Insurance Co.*, 326 So. 2d 891, 892–893 (1976); *J.M. Brown Const. Co. v. D & M Mechanical Constr., Inc.*, 222 So. 2d 93, 98 (1969); *Mut. Fire Marine & Inland Ins. v. Vollmer*, 508 A.2d 130, 135 (1986). Como ejemplo de lo anterior podemos mencionar un diagnóstico incorrecto, un encubrimiento fraudulento por parte de un abogado o el diseño defectuoso de un arquitecto. *Mut. Fire Marine & Inland Ins. v. Vollmer*, supra, pág. 135. En tales circunstancias, las pólizas de *ocurrencia* no son efectivas para cubrir los mencionados riesgos debido a la dificultad

---

(⁴) Reconocemos que puede haber situaciones en que la reclamación haya sido hecha en contra del asegurado o que se haya presentado una demanda en contra de la aseguradora dentro del término de vigencia de la póliza y que no haya sido razonablemente posible notificar, en uno u otro caso, a la aseguradora dentro de dicho término o dentro de la extensión pactada después de la expiración de la póliza. En estas situaciones habría que examinar las circunstancias presentes para determinar si tal falta de notificación constituye o no una exoneración de la aseguradora. Sin embargo, nada se ha invocado o demostrado en este caso que justifique tal ausencia de notificación.

648

en establecer la fecha de ocurrencia de los hechos o eventos que dan margen a su reclamación. *Stine v. Continental Cas. Co.*, supra. Como resultado de tal dificultad, las compañías aseguradoras se vieron expuestas al riesgo resultante de eventos que no podían ser fijados en el tiempo, extendiéndose tal riesgo en muchos casos más allá de la fecha de expiración de la póliza. Ésta y otras consideraciones tales como la inflación, el aumento en espiral del monto de los veredictos, la adopción y el desarrollo de nuevos conceptos en el campo de daños y perjuicios a través de legislación y de decisiones judiciales, tuvieron como resultado el que se fijaran primas más altas para este tipo de póliza.

■ Las pólizas *claims made* fueron diseñadas para contrarrestar este resultado. Bajo ellas, el asegurador está en mejor posición para vislumbrar y asegurar los riesgos, computar las primas y establecer las reservas requeridas con mayor certeza.

La consideración de tales factores descansa en el fundamento de que su responsabilidad estará limitada a las reclamaciones que se le notifiquen durante el período de vigencia de la póliza para el cual la prima fue computada. Kroll, *The Professional Liability Policy "Claims Made"*, supra, pág. 848. Esta limitación le permite al asegurador estimar con más precisión las primas necesarias a los fines de acomodar los riesgos asumidos. Íd., pág. 849. Ello es así porque al limitar el asegurador la duración del término al cual estará expuesto, tendrá disponible un conjunto de datos actuariales más precisos, lo cual le permite cobrar una prima más baja que aquella que tendría que cobrar para una póliza de ocurrencia. *Stine v. Continental Cas. Co.*, supra, pág. 131.

Por otro lado, la póliza *claims made* ofrece al asegurado la oportunidad de obtener una cubierta para eventos que puedan haber tenido lugar durante un período anterior al

comienzo de la póliza. Esta otra ventaja no la tiene un asegurado bajo una póliza de ocurrencia.

Como consecuencia de las ventajas reseñadas anteriormente y debido a las peculiares características de las pólizas *claims made*, generalmente se ha sostenido su validez por distintas razones de utilidad y orden público.

> "Claims made" or "discovery" policies beneficially permit insurers to more accurately predict the limits of their exposure and the premium needed to accommodate the risk undertaken, with countervailing benefits to insureds in premiums lower than would be necessary for 'occurrence' policies. Thus, courts have held that they are valid and not against public policy." *Appleman*, supra, Sec. 4504.1, pág. 98.

En el citado caso *Stine v. Continental Cas. Co.*, supra, pág. 138, al confrontarse con un ataque similar al que se hace a la póliza en este caso, el Tribunal Supremo de Michigan se expresó del modo siguiente:

> It is urged that the absence of "prior acts" or "retroactive" coverage and the absence of post-policy peril or "long tail" coverage is a violation of public policy because the insurance policy "denied [plaintiff] the primary benefit of a 'claims made' policy", was contrary to his "reasonable expectation" as to coverage, and thus rendered the insurance policy "worthless".

> The defendant sold and the plaintiff purchased a "claims made" policy. By definition, as well as by its plain terms, such a policy does not provide coverage for claims brought after the expiration of the policy period. If such coverage is desired, one must purchase, if available, an "ocurrrence" type policy or *continue to renew a "claims made" policy.* (Énfasis suplido.) *Stine v. Continental Cas. Co.*, supra, pág. 138.

De lo anterior se deduce que la protección de responsabilidad profesional provista bajo una póliza *claims made* necesariamente conlleva la renovación de la póliza por todo el tiempo que el asegurado se dedica a la práctica

de su profesión.(5) Tal necesidad de continuidad, lejos de desvirtuar la política enmarcada en el Capítulo 41 del Código de Seguros de Puerto Rico, añadido a dicho código por la Ley Núm. 4 de 30 de diciembre de 1986 (26 L.P.R.A. secs. 4101–4107), la favorece. El capítulo exige, entre otras cosas —como alternativa al requisito de radicar *anualmente* prueba de la responsabilidad financiera del médico exigido por el Art. 41.050 (26 L.P.R.A. sec. 4105)— la obtención de una póliza anual de responsabilidad por impericia médica con los límites allí dispuestos.

Véanse, además: *Joseph R. Loring & Assoc. v. Continental*, 438 N.E.2d 875 (1982); *Gereboff v. Home Indemnity Co.*, 383 A.2d 1024 (1978); *Zuckerman v. National Union Fire Ins. Co.*, supra; *Gulf Ins. Co. v. Dolan, Fertig and Curtis*, supra; *Poirier v. National Union Fire Ins. Co.*, 517 So. 2d 225 (1987).

## IV

La cláusula de cubierta en el caso de autos lee como sigue:

I. COVERAGE AGREEMENTS

The Company will pay on behalf of the insured:

COVERAGE M-INDIVIDUAL PROFESSIONAL LIABILITY

All sums which the insured shall be legally obligated to pay as damages because of injury to which this insurance applies caused by a medical incident occuring subsequent to the retroactive date, for which claim is first made against the insured *and reported to the company during the policy period,* arising out of the practice of the insured's profession as a physician, surgeon or dentist. (Énfasis suplido.) Apéndice, pág. 35.

---

(5) El Art. 41.040(6) del Código de Seguros de Puerto Rico, 26 L.P.R.A. sec. 4104(6), exige a los aseguradores del riesgo de impericia médica que la póliza "garantice el derecho del asegurado a que se le emita una cubierta de cola por un término indefinido en caso de que termine su cubierta por retiro o separación voluntaria o involuntaria de la profesión ...".

Además, en su parte pertinente, el párrafo VIII de la póliza dispone lo siguiente:

VIII. EXTENDED REPORTING PERIODS

(a) The company will provide one or more Extended Reporting Periods, as described below, if:
 1. This insurance is cancelled or not renewed; or
 2. The company renews or replaces this insurance with an insurance that does not apply to injury caused by a medical incident on a claims-made basis.
(b) A Basic Extended Reporting Period is automatically provided without additional charge. This period starts with the end of the policy period and lasts for:
 1. Five years for claims arising out of an event reported to the company, not later than 60 days after the end of the policy period, in accordance with the first paragraph of the amended condition entitled "assistance and cooperation of insured".
 2. Sixty days for all other claims. Apéndice, pág. 40.

Estas cláusulas resultan claras y libres de toda ambigüedad. A tenor con ellas no basta con que se presente judicialmente una demanda en contra del asegurado o su aseguradora durante el término de vigencia de la póliza. Es preciso, además, que la reclamación contenida en la demanda haya sido notificada a la aseguradora durante el término de vigencia de la póliza o dentro del período adicional de sesenta (60) días provisto por la cláusula de extensión antes transcrita. Véanse: *Poirier v. National Union Fire Ins. Co.*, supra; *U. S. v. A.C. Strip*, supra; *National Union Fire Ins. Co. v. Talcott*, 931 F.2d 166 (1er Cir. 1991); *McFarland v. Sauvinet*, 525 So. 2d 686 (1988); *Zuckerman v. National Union Fire Ins. Co.*, supra; *Gulf Ins. Co. v. Dolan, Fertig and Curtis*, supra; *Esmailzadeh v. Johnson & Speakman*, 869 F.2d 422 (8vo Cir. 1989).

 Un contrato de seguros, al igual que todo otro contrato, constituye la ley entre las partes siempre que en él concurran las condiciones esenciales para su validez. Art. 1230 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 3451. Ambas partes, asegurador y asegurado, se obligan,

pues, a cumplir con los términos y las condiciones de la póliza. *Couch*, supra, Vol. 1, Sec. 1:2. En los casos en que el lenguaje de la póliza sea claro y sin ambigüedades no será de aplicación a ellos la regla de interpretación contenida en el Art. 1240 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 3478,[6] por lo que las partes deberán atenerse a sus cláusulas, dándoles efectividad y vigor de la forma en que lo manifestaron al momento de contratar. La norma que rige en nuestra jurisdicción de que los contratos de seguro, por ser de adhesión, deben ser interpretados liberalmente a favor del asegurado, no tiene el efecto de obligar a que se interprete a favor de éste una cláusula que claramente y sin ambigüedad le da la razón al asegurador en la controversia que se suscite entre ambos. *González v. Coop. Seguros de Vida de P.R.*, 117 D.P.R. 659 (1986); *Casanova v. P.R.-Amer. Ins. Co.*, 106 D.P.R. 689 (1977).

A la luz de los principios expuestos anteriormente es forzoso concluir que las pólizas *claims made* no constituyen una violación de política pública alguna y que el requisito de notificación de la reclamación dentro del término de vigencia de tales pólizas o dentro de la extensión del término para notificar, pactado en éstas, es parte integral del riesgo previsto y asumido por la aseguradora. Por lo tanto, si no se cumple con dicho requisito *no surge el evento asegurado* y, por consiguiente, la compañía aseguradora no tiene obligación alguna de proveer cubierta. *Stine v. Continental Cas. Co.*, supra, pág. 135.

A tenor con la anterior conclusión, resolvemos que la mera presentación de la demanda en este caso dentro del término de vigencia de la póliza, sin que en forma alguna se hubiera dado conocimiento de tal reclamación a la recurrida Corporación Insular de Seguros dentro del mencio-

---

[6] "La interpretación de las cláusulas obscuras de un contrato no deberá favorecer a la parte que hubiese ocasionado la obscuridad." 31 L.P.R.A. sec. 3478.

nado término o dentro de su extensión, privó de cubierta al asegurado.

*Se expide el auto de revisión solicitado y se dictará sentencia que confirme la sentencia parcial recurrida dictada por la Sala de Aguadilla del Tribunal Superior de Puerto Rico en el Caso TS-88-52, el 12 de diciembre de 1990.*

Los Jueces Asociados Señores Negrón García y Rebollo López emitieron unas opiniones disidentes.

— O —

Opinión disidente emitida por el Juez Asociado Señor Negrón García.

## I

Tres (3) razones nos impiden refrendar la opinión del Tribunal. *Primero*, "la extraordinaria importancia y el papel evidente social de que participa el seguro de responsabilidad civil. Tanto para la víctima, por las razones expuestas de la seguridad que tiene en su indemnización, caso de que a ello tenga derecho, como desde el punto de vista del asegurado, hoy verdaderamente necesitado, de este seguro por estar expuestos, por sus actividades o profesión a causar a otros daños que gravarían extraordinariamente su patrimonio, conducen a afirmar la gran importancia que en la vida moderna tiene el seguro de responsabilidad civil". L. Benítez de Lugo Reymundo, *El Riesgo Jurídico*, Madrid, Viuda Galo Sáez, 1961, págs. 32–33. *Segundo*, el "interés público del cual está revestido el seguro de responsabilidad médico-hospitalaria" en Puerto Rico. Art. 41.070 (enmendatorio del Código de Seguros de Puerto Rico, Ley Núm. 4 de 30 de diciembre de 1986 (26 L.P.R.A. sec. 4107)). Y *tercero*, la obligación legal, impuesta a todo médico e institu-

ción dedicada al cuidado de la salud, de mantener un seguro de responsabilidad para cubrir riesgos de daños por culpa o negligencia por impericia profesional (*malpractice*). Art. 41.050 del Código de Seguros de Puerto Rico, 26 L.P.R.A. sec. 4105.

## II

Los seguros, como contratos, no pueden ser contrarios a la ley ni al orden público. Art. 1207 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 3372. La glosa los agrupa dentro de los contratos cuyos contornos son limitados en función al llamado "Derecho Social", en que se reduce al mínimo el principio de la autonomía de la voluntad. J. Castán Tobeñas, *Derecho Civil español, común y foral*, 15ta ed. rev., Madrid, Ed. Reus, 1988, T. III, pág. 467. Son producto de un pensamiento evolutivo que pone énfasis en la visión de que toda relación contractual no sólo es un medio de realización individual, sino cauce que propugna un interés social. "[R]epresenta el interés público, social y de ley en el Derecho privado, lo permanente y esencial de las instituciones, lo que aun favoreciendo a algún individuo en quien se concrete el derecho, no puede quedar a su arbitrio." J.M. Manresa y Navarro, *Código Civil Español*, Madrid, Ed. Reus, 1977, T. VIII, Vol. 2, pág. 381; E. Linde Paniagua, *Derecho Público del Seguro*, Madrid, Ed. Montecorvo, 1977, págs. 27–28.

Por esa razón, tradicionalmente, los contratos de seguros —que son de adhesión— han sido objeto de cuidadoso escrutinio judicial; cualesquiera dudas se interpretan a favor del asegurado con el objetivo de, por vía de una interpretación razonable, sostener la cubierta. *González v. Coop. Seguros de Vida de P.R.*, 117 D.P.R. 659, 662 (1986); *Roldán Medina v. Serra*, 105 D.P.R. 507, 514 (1976); *Ferrer v. Lebrón García*, 103 D.P.R. 600, 603 (1975); *Rivera v. Insurance Co. of P.R.*, 103 D.P.R. 91, 93 (1974); *Rosario v. Atl.*

*Southern Ins. Co. of P.R.*, 95 D.P.R. 759, 765 (1968); *Pérez Escolar v. Collado*, 90 D.P.R. 806, 811 (1964); *Barreras v. Santana*, 87 D.P.R. 227, 232–233 (1963); *Maryland Cas'y Co. v. San Juan Rac'g Assoc., Inc.*, 83 D.P.R. 559, 565–566 (1961).

Ese escrutinio se inspira en que los tribunales tenemos la responsabilidad singular de velar que estos contratos de adhesión (seguros) no violen el interés público, mercadeándose pólizas que provean cubiertas inadecuadas o que atenten contra la realidad y la dinámica social y económica de nuestra sociedad.

El alto interés público de que están revestidos los seguros compulsorios de responsabilidad médico-hospitalarios opera como una limitación: la cubierta tiene que ajustarse a las leyes y al interés público. *Brown-Spaulding v. Intern. Surplus Lines*, 254 Cal. Rptr. 192, 194 (1988). Exploremos específicamente esta dimensión en el caso de autos.

## III

Las pólizas de responsabilidad profesional pueden ser de *ocurrencia (ocurrence policy)* o, como la de autos, de *reclamaciones hechas (claims made)*. 11 *Couch on Insurance 2d (Ed. rev.)* Sec. 44.256 (1982). Estas últimas generalmente aseguran reclamaciones hechas y notificadas *durante* el período de vigencia de la póliza, independientemente de la fecha en que ocurrió el evento que genera la reclamación. Este tipo de póliza ha sido validada, pues la mayoría de los tribunales norteamericanos ha reconocido su utilidad social. Sin embargo, requerir que la reclamación sea notificada al asegurador *durante* el período de cubierta o dentro del brevísimo término de gracia de sesenta (60) días, presenta serias interrogantes en cuanto a la efectividad de esa limitación sobre el interés público (médicos y perjudicados).

El requisito de notificación de la póliza de reclamación hecha (*claim made*) *limita excesivamente* la extensión de la cubierta médica. Las expectativas objetivas y razonables del médico adquirente y perjudicado del seguro se desvanecen cuando le presenten reclamaciones poco antes de la fecha de su expiración, y por esa razón no pueda notificarlas al asegurador hasta después de su vencimiento o el de los sesenta (60) días de gracia.

Este tipo de póliza desvirtúa además la exigencia de *continuidad* de póliza compulsoria médica. El médico que al año cambie de asegurador, podría encontrarse en la indeseable y peligrosa posición de no estar cubierto por ninguna; resultado de la interpretación de que la notificación debe ser hecha inflexiblemente dentro del período de vigencia o de gracia de la póliza. Tal sería la situación en una reclamación nacida por hechos acaecidos en los últimos días de su vigencia, notificada después de comenzada la cubierta de la segunda; ninguna proveería cubierta. La primera, porque la notificación *no fue durante* su vigencia o período de gracia, y la segunda, pues fue hecha *antes* de su vigencia. Bajo cualquiera de las pólizas, el efecto del requisito de notificación anula la cubierta.

Distinto a otras jurisdicciones, en Puerto Rico el requisito de notificación absoluta dentro del término de la póliza o el breve de sesenta (60) días, incide más allá de lo permisible sobre la libertad de contratar del médico.

## IV

Pero hay más. La interpretación mayoritaria no sólo viola las legítimas consideraciones de interés público, sino que es contraria a las propias restricciones de la ley que crea el seguro para todo profesional e institución dedicada al cuidado de la salud. Nos explicamos.

El Art. 41.040(6) del Código de Seguros de Puerto Rico, 26 L.P.R.A. sec. 4104(6), en lo pertinente, impone a las ase-

guradoras que operen en el mercado libre de competencia y al Sindicato de Aseguradores proveer "a los solicitantes cualificados seguro de responsabilidad profesional médico-hospitalaria *en un formulario de póliza uniforme para todos* los profesionales de servicios de salud a instituciones del cuidado de salud. *Dicho formulario de póliza uniforme cumplirá con los requisitos exigidos en las secs. 1101 a 1137 de este título ...".* (Énfasis suplido.) 26 L.P.R.A. sec. 4104(6). A su vez, el Art. 11.190 (26 L.P.R.A. sec. 1119) prohíbe toda condición, estipulación o acuerdo "[p]ara limitar el derecho de entablar acción contra el asegurador a un período menor de un año desde la fecha en que surja causa de acción *en relación con todo seguro* que no sea seguro de propiedad, seguro contra siniestros marítimos y seguro de transporte; en las pólizas de seguro de propiedad, contra siniestros marítimos y de transporte, tal derecho no podrá limitarse a un período menor de un año desde la fecha en que ocurra el suceso que resulte en la pérdida." (Énfasis suplido.)

El mandato legislativo, compatible con la protección que genera el seguro compulsorio es claro: no puede limitarse el período de un (1) año para demandar al asegurador. Esa cláusula es nula. No podría ser de otro modo, pues se anularía todo el esfuerzo legislativo y la doctrina jurisprudencial. Los autos originales revelan incidentes relacionados con la negativa de las autoridades médicas a darles a los demandantes Torres *et al.* acceso a los récord médicos. Sólo después de la intervención del foro de instancia se logró conocer los nombres de los galenos involucrados.

Por tal razón, coincidimos, pues, con el planteamiento central de los recurrentes José Iván Torres *et al.* de que la cláusula de reclamaciones hechas (*claims made*) en las tres (3) pólizas en controversia son contrarias a la ley y al orden público. La dificultad de acceso a los récord y nombres de médicos contribuye a agravar más la situación. De hecho,

658

anula el mandato legislativo que exige el mantenimiento y la continuidad de una póliza *compulsoria* de responsabilidad médica. Además, atenta contra "la realidad y dinámica humanas de que médicamente habrá ocasiones en que el acto u omisión negligente genera un daño en forma simultánea o coetánea; y que, en otros, el daño sobreviene y se manifiesta con posterioridad". *Rodríguez v. Barreto*, 113 D.P.R. 541, 548 (1984), opinión disidente.

Ante estas realidades, ¿puede seriamente sostenerse que este tipo de póliza no afecta el interés público? ¿No es este caso un buen ejemplo? Inventario final de esa erosión: *médicos y pacientes salen perjudicados*. No deberíamos extender los secretos de las salas de los quirófanos a las salas de justicia.

— O —

Opinión disidente emitida por el Juez Asociado Señor Rebollo López.

No obstante ser del criterio que las pólizas de seguro del tipo de "reclamaciones hechas" (*claims made*), interpretadas correctamente, *no* contravienen política pública alguna del Estado Libre Asociado de Puerto Rico, *disentimos* por razón de entender que el Tribunal, *al hacer caso omiso de varios estatutos vigentes en nuestro ordenamiento y erróneamente interpretar la doctrina y jurisprudencia relativa al referido tipo de póliza de seguro*, establece una norma de derecho equivocada que causa, naturalmente, que se llegue a un *resultado erróneo* en el caso específico ante nuestra consideración.

Lo verdaderamente lamentable, sin embargo, resulta ser el establecimiento en nuestra jurisdicción —en el importante campo de las pólizas de seguro relativas a las acciones sobre "mala práctica" de la medicina— de una norma jurisprudencial que es nociva y perjudicial tanto

para los médicos asegurados como para los pacientes de dichos profesionales de la salud; esto es, a quien única y erróneamente favorece la decisión mayoritaria hoy emitida es a las compañías de seguro.

# I

En el presente caso, *la demanda* por alegada impericia médica *fue radicada* contra el médico codemandado y su compañía aseguradora, la Corporación Insular de Seguros, *dentro del período de vigencia de la póliza* que ésta había expedido a favor del referido facultativo médico. Dicha compañía de seguros *fue emplazada*, sin embargo, *fuera del término de vigencia* de la póliza expedida por ella.

A base de ello, el Tribunal resuelve que la póliza expedida por Corporación Insular de Seguros *no* cubre la reclamación de la parte demandante por cuanto, *conforme expresa el Tribunal*, "no basta con que se presente judicialmente una demanda en contra del asegurado o su aseguradora durante el término de vigencia de la póliza. Es preciso, además, que la reclamación contenida en la demanda haya sido notificada a la aseguradora durante el término de vigencia de la póliza o dentro el período adicional de sesenta (60) días provisto por la cláusula de extensión antes transcrita". Opinión mayoritaria, pág. 651.

*¿Qué significa ello? ¿Qué consecuencias tendrá dicha errónea conclusión mayoritaria en el campo de la litigación de daños y perjuicios, en específico, en relación con las acciones por alegada mala práctica de la medicina?* Veamos.

El paciente de un médico, de ordinario, *no* sabe si el médico —ante el cual acude en busca de alivio para la afección que le aqueja— está o no asegurado. De saberlo, por haber extrañamente inquirido respecto a ello, *no* conoce el nombre específico de la compañía que asegura a dicho médico. Es debido precisamente a ello que, en un gran nú-

mero de casos, la demanda que se radica identifica, e incluye, a la compañía aseguradora del médico como un "demandado desconocido" y que dicha compañía es incluida en el pleito por su nombre verdadero y específico, mediante enmienda a esos efectos, únicamente luego de que se lleva a cabo el descubrimiento de prueba.

*Hasta el día de hoy*, todo lo que este Tribunal le había requerido al *ciudadano*, alegadamente perjudicado por un acto de mala práctica de la medicina, era que radicara la demanda dentro del término de un (1) año de haber tenido conocimiento del daño sufrido o antes que transcurriera el término de un (1) año desde que interrumpió el referido período prescriptivo mediante una reclamación extrajudicial. Véanse: Art. 1868 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 5298; *Riley v. Rodríguez de Pacheco*, 119 D.P.R. 762, 775 (1987); *Cintrón v. E.L.A.*, 127 D.P.R. 582 (1990); *Zambrana Maldonado v. E.L.A.*, 129 D.P.R. 740 (1992).

*De hoy en adelante, la situación ha cambiado de forma dramática.* El ciudadano afectado por un alegado acto de mala práctica de la medicina *deberá*, en adición a lo anteriormente expresado, *conocer* si el médico que alegadamente causó el daño sufrido por él está o no asegurado; *cuál* es la compañía de seguros específica que expidió la póliza; *si* dicha póliza es una de *ocurrence* o de *claims made; y, finalmente*, el período de vigencia de dicha póliza. *Todo ello con el propósito de poder notificar y emplazar a la compañía de seguros dentro del término de vigencia de la póliza so pena de perder la acción contra la compañía de seguros.*

*La posición hoy asumida por el Tribunal atenta contra, o violenta, varias normas estatutarias y principios firmemente establecidos en nuestra jurisdicción en materia de daños y perjuicios.*

En relación con el término de un (1) año que establece el citado *Art. 1868 del Código Civil* de Puerto Rico, ante, rei-

teradamente hemos resuelto que la *mera* radicación de la demanda interrumpe el referido término prescriptivo, *esto es, que no se requiere que se emplace al demandado dentro del mencionado término de un (1) año.* Véanse: *Feliciano v. A.A.A.*, 93 D.P.R. 655 (1966); *Durán Cepeda v. Morales Lebrón*, 112 D.P.R. 623 (1982); *Silva Wiscovich v. Weber Dental Mfg. Co.*, 119 D.P.R. 550 (1987); *Cintrón v. E.L.A.*, ante. Por otro lado, no debe perderse de vista que, conforme establece el *Art. 1874 del Código Civil* de Puerto Rico, 31 L.P.R.A. sec. 5304, la radicación de la demanda contra un demandado en particular *interrumpe* dicho término de prescripción en relación con cualquier otra persona que sea *solidariamente* responsable del daño causado. *García v. Gobierno de la Capital*, 72 D.P.R. 138 (1951); *Sánchez Rodríguez v. López Jiménez*, 118 D.P.R. 701 (1987). Una compañía de seguros, como es sabido, responde de *manera solidaria* por los actos de negligencia que cometa su asegurado. De hecho, y como todos conocemos, en nuestra jurisdicción existe la *acción directa* contra la compañía de seguros. Véanse: *Art. 20.030 del Código de Seguros* de Puerto Rico, 26 L.P.R.A. sec. 2003; *Trigo v. The Travelers Ins. Co.*, 91 D.P.R. 868 (1965).

Siendo ello así y exigiéndole nuestro ordenamiento a un ciudadano, que se ve afectado por un alegado acto de mala práctica de la medicina, *únicamente* que radique su acción dentro de un determinado período prescriptivo y concediéndole el ordenamiento a ese ciudadano, inclusive, el derecho a radicar una acción directa contra el asegurador, ¿puede oponérsele con éxito a ese "tercero" perjudicado las cláusulas de un contrato entre dos partes privadas? Estamos conscientes del hecho que las compañías de seguro responden, de ordinario, conforme a los términos y condiciones de la póliza que expiden. *Pero, cabe preguntarse, ¿puede una cláusula de un contrato celebrado entre dos partes privadas variar las disposiciones, y mandatos, de*

*estatutos que forman parte de nuestro ordenamiento jurí-
dico?*

A nuestra manera de ver las cosas, *si la fecha en que se
radica la acción en corte contra el médico y/o su compañía
de seguros está comprendida dentro del período de vigencia
de la póliza de "claims made" expedida, la compañía de
seguros tiene que brindar cubierta, independientemente del
hecho de que ésta fuera notificada o emplazada fuera del
término de vigencia.* En otras palabras, la fecha impor-
tante y determinante es la fecha de la *radicación* de la
demanda, *la cual constituye aviso jurídico, suficiente y
constatable, a todas las partes envueltas del ejercicio de la
acción por parte del demandante.*

Así lo hemos resuelto en relación con el término pres-
criptivo de un (1) año que rige la acción de daños y
perjuicios. *Feliciano v. A.A.A.*, ante. Igual razonamiento
debe ser aplicado, *por analogía y por imperativo de ley*, al
término de vigencia contenido en la póliza de seguro cono-
cida como *claims made.*

La posición asumida por el Tribunal en el día de hoy es
insostenible. La propia jurisprudencia que se cita en la opi-
nión mayoritaria sostiene *nuestra* posición. Como habrá
podido notarse, a la página número 649 de la misma, se
cita el caso de *Stine v. Continental Cas. Co.*, 349 N.W.2d
127 (1984). En el mismo se expresó, en lo pertinente, que:

> The defendant sold and the plaintiff purchased a "claims
> made" policy. By definition, as well as by its plain terms, *such a
> policy does not provide coverage for claims brought after the
> expiration of the policy period.* If such coverage is desired, one
> must purchase, if available, an "ocurrence" type policy or con-
> tinue to renew a "claims made" policy. (Énfasis suplido.) *Stine v.
> Continental Cas. Co.*, ante, pág. 138.

Como podemos notar, se expresa en dicha decisión que
las pólizas del tipo *claims made* no brindan cubierta a *"re-
clamaciones (claims) hechas* después de la fecha de expira-
ción del período de vigencia". (Traducción nuestra.) No se

habla ni se exige que se le dé *notificación* a la compañía aseguradora dentro, o fuera, del referido período. Se exige que la *reclamación* —ya sea judicial o extrajudicial— *se haga* dentro del período de vigencia. *A esos efectos, la radicación formal de una demanda ante un foro judicial dentro del período de vigencia de la póliza tiene que necesariamente ser suficiente.*

En resumen, las pólizas de seguro del tipo *claims made, de por sí,* no violan política pública alguna. La *interpretación errónea* que en relación con dicho tipo de póliza hace el Tribunal es la que resulta ser violatoria de política pública; ello por razón de que la misma *coarta y restringe* unos derechos que le concede nuestro ordenamiento jurídico a los ciudadanos de este País.

## II

La decisión hoy emitida no sólo afecta a los ciudadanos reclamantes, sino que a los médicos asegurados, por cuanto deja a estos últimos sin la cubierta de una póliza por la cual pagaron una prima. Únicamente favorece, repetimos, a los compañías de seguro. Dicha decisión mayoritaria, inclusive, es contraria a la reiterada norma a los efectos de que los contratos de seguros "deben ser generalmente entendidos en su más corriente y usual significado, sin atender demasiado al rigor gramatical, sino al uso general y popular de las voces. El asegurado que adquiere una póliza tiene derecho a confiar en la cubierta que se le ofrece leyendo sus cláusulas a la luz del sentido popular de sus palabras". *Morales Garay v. Roldán Coss,* 110 D.P.R. 701, 706 (1981). Además, que como contratos de adhesión, cualquier ambigüedad en la interpretación de éstos debe resolverse a favor del asegurado. Véanse: *Morales Garay v. Roldán Coss,* ante; *The London Assurance v. Tribunal Superior,* 95 D.P.R. 305 (1967); *Pagán Caraballo v. Silva, Ortiz,* 122 D.P.R. 105 (1988), entre otros.