# State of New York Court of Appeals

MEMORANDUM

This memorandum is uncorrected and subject to revision before publication in the New York Reports.

No. 31  SSM 32
Julia Bonem,
     Appellant,
      v.
William Penn Life Insurance
Company of New York,
     Respondent.

Submitted by Evan S. Schwartz, for appellant.
Submitted by Robert D. Meade, for respondent.

MEMORANDUM:

The order of the Appellate Division should be affirmed, with costs.

In 2002, plaintiff's husband—the decedent—purchased a life insurance policy from defendant William Penn Life Insurance Company of New York. The policy provides that

- 1 -

"[t]he due date for the first premium is the Date of Issue," identified as January 14, 2002, and the due date for subsequent premiums is "the day after the end of the period for which the previous premium was paid." The policy further provides that premiums are payable as shown in a policy schedule, which also identifies the "premium due date" as January 14th. According to the terms of the policy, premiums must be paid by the due date of January 14th or the end of a 31-day grace period following that date, after which policy coverage lapses. For 15 years, the parties abided by that premium date. Despite notice advising decedent that the premium was due January 14th, 2018, decedent failed to pay by that date or within the next 31 days. Decedent died on February 26, 2018 without having remitted payment, and defendant subsequently denied plaintiff's claim for benefits on the basis that the policy had lapsed prior to decedent's death.

Plaintiff is not entitled to benefits under the policy. The terms of the policy clearly and unambiguously tie the due date of the annual premium to the date of issue, January 14, 2002, and expressly state that January 14 is the premium due date. That the insurance policy uses the term "annual" but the premium payment period—which runs from January 14th, the "Date of Issue" and "premium due date"—may not cover a full year creates no ambiguity in light of the clear policy language identifying January 14th as the "premium due date" (*see Goldman v Metro. Life Ins. Co.*, 5 NY3d 561, 571 [2005]). Furthermore, any claimed ambiguity in the definition of "policy date" is irrelevant inasmuch as the policy does not tie the premium due date to the "policy date" but, rather, the date of issue, which is January 14th. Because the insured failed to pay the 2018 premium by January 14, 2018 or within the 31-day grace period, the policy lapsed prior to the insured's death.

WILSON, J. (dissenting):

*Verba chartarum fortuis accipiuntur contra proferentem*. The words of a contract will be construed strongly against the party who offered it. Not only does that legal maxim date back a few millennia, but it is a longstanding fixture of New York law: "if there is a reasonable doubt as to the meaning or application of this clause, it should be construed

most favorably to the insured, because the insurer prepared and executed the contract and is responsible for the language used" (*Halpin v Ins. Co. of N. Am.*, 120 NY 73, 78 [1890] [citations omitted]; *see also J.P. Morgan Sec. Inc. v Vigilant Ins. Co.*, 2021 NY Slip Op 06528, *3 [contracts must be interpreted "with any ambiguities construed against the insurer and in favor of the insured"]). That doctrine is recognized by every state of the Union, the District of Columbia, and courts in the U.S. territories; it is also well established around the world.[1] Where large companies engage teams of lawyers to draft lengthy, impenetrable take-it-or-leave-it contracts presented to consumers, the doctrine promotes an essential legal concept: fairness.

In January 2002, Michael Dzialo, then 39 years old and married with two children, purchased a $1 million life insurance policy for their security from the William Penn Life

---

[1] *See* Williston on Contracts, § 49:15 at nn.1-6 (4d ed 2021) (collecting cases from all but three states); *Georgia Farm Bureau Mut. Ins. Co. v Meyers*, 548 SE2d 67, 69 (Ga 2001); *Connors v Government Employees Ins. Co.*, 113 A3d 595, 604-05 (Md 2015); *North Pacific Ins. Co. v Hamilton*, 22 P3d 739, 741 (Ore 2001); *Carlyle Inv. Mgt. LLC v Ace American Ins. Co.*, 131 A3d 886, 895 (DC 2016); *National Union Fire Ins., Co. of Pittsburgh, Pa. v Guam Housing & Urban Renewal Auth.*, 2003 Guam 19 (2003); *Ishimatu v Royal Crown Ins. Corp.*, 2010 MP 8 (2010) (Northern Mariana Islands); *Torres v Estado Libre Asociado de Puerto Rico*, 130 DPR 640 (1992) (Puerto Rico); UNIDROIT Principles of Intl. Commercial Contracts § 4.6 (2016); The Principles of European Contract Law § 5:103 (2002); *Halford v Price* 105 CLR 23 (1960) (High Court of Australia, Opinion of Dixon, C.J.) (Australia); *Co-Operators Life Ins. Co. v Randolph Charles Gibbons & Canadian Life and Health Ins. Assn. Inc.*, 3 SCR 609, 618 (2009) (Canada); Bank Of India & Anr. V. K.mohandas & Ors. Insc 632 (2009) (India); Dillon Eustace, 1 Intl. Ins. Law & Regulation § 23:20 (2021) (Ireland); S. Radhakrishnan, 2 Intl. Ins. Law & Regulation § 32:16 (2021) (Malaysia); Julita Zimoch-Tucholka, 1 Intl. Ins. Law & Regulation § 40:14 (2021) (Poland); *Cairns (Pty.) Ltd. v Playdon & Co. Ltd.* 1948 (3) SA 99 (A) at 121-123 (South Africa); Pelin Baysal & Ilgaz Önder, 2 Intl. Ins. Law & Regulation § 50:14 (2021) (Turkey).

Insurance Company of New York. When applying for coverage, the sole reason he gave for deciding to purchase life insurance was "family protection". He dutifully paid the premiums. Sixteen years later, he died. Upon his death, Ms. Bonem, his wife, sought to collect on the policy. The insurance company rejected her claim on the ground that Mr. Dzialo missed the payment due shortly before his death, resulting in the policy's automatic termination.

Ms. Bonem's entitlement to recover under the insurance policy depends entirely on the proper interpretation of its terms. Under William Penn's interpretation, Mr. Dzialo's payment was due 12 days before his death; when he failed to make that payment, the policy lapsed. Under Ms. Bonem's interpretation, Mr. Dzialo's final payment was not yet due, keeping the policy intact. Both interpretations are plausible, which means the life insurance contract is ambiguous. Because the policy is ambiguous, Ms. Bonem wins. The insurer can protect itself going forward by improving its form contract. That is how the doctrine of *contra proferentem* advances both fairness and efficiency.

I

The parties agree to the following: (1) the life insurance contract states that the entire policy lapses after the due date of an unpaid premium, but also provides a 31-day grace period beyond the due date for premium payments, during which the contract remains in full force; (2) Mr. Dzialo made his first premium payment on January 31, 2002, the date the policy was executed; (3) the policy provides that it would "not take effect until it has been delivered and the first premium has been paid"; and (4) Mr. Dzialo died on February 26, 2018.

The insurer interprets the policy as requiring payment on January 14 of each year, with a grace period that allowed payment through February 14. Its interpretation relies on a provision on a page entitled, "Schedule of Benefits and Premiums," which lists "01/14" as the "Premium Due Date." That interpretation is plausible. Were that all the policy said, the insurer should prevail.

However, the policy contains terms that support Ms. Bonem's interpretation.[2] The section of the policy entitled "Premium Payment" states:

> "The due date for the first premium is the Date of Issue. The first premium must be paid to the agent with the application or upon delivery of the contract. The due date for each premium after the first is the day after the end of the period for which the previous premium was paid."

The contract thus makes a clear distinction between the date for the first premium (the Date of Issue—a defined term), and the date for subsequent payments. It would have been simple to say that the due date for each premium after the first is the yearly anniversary of the Date of Issue, but that is not what the policy says. Instead, it says that the due date for subsequent premiums is the "day after the end of the period for which the previous premium was paid."

The policy coverage is plainly for a year at a time: it is repeatedly described as "annual." The policy states: "This contract will not take effect until it has been delivered and the first premium has been paid." The application, which by its terms "shall be attached to and made a part of any policy to be issued," states in bold type: "**no insurance shall take effect until the policy has been physically delivered and the first full premium**

---

[2] It is also bears note that the "Premium Due Date" is not among the defined terms in the policy and does not appear within the body of the contract, but appears only on a page preceding the definitions and body of the contract.

**paid**". There is no dispute that the policy did not go into effect until January 31, 2002, when Mr. Dzialo met with the agent, signed the policy, and delivered the first payment. Ms. Bonem's argument is also plausible: when, on January 31, 2002, her husband signed the policy and paid the first premium, he purchased a year of coverage, ending January 30, 2003. By the terms of the policy, his next payment, and all subsequent payments, were due on "the day after the end of the period for which the previous premium was paid"—that is, January 31. Tacking on the 31-day grace period, the policy had not expired on the date Mr. Dzialo passed away. The insurer does not dispute that, if Ms. Bonem's interpretation is correct, she is entitled to recover under the policy.

The majority asserts that "any claimed ambiguity in the definition of 'policy date' is irrelevant inasmuch as the policy does not tie the premium due date to the 'policy date' but, rather, the date of issue, which is January 14th" (majority op at 2). To the contrary, the "Policy Date" determines the due date for the allegedly missed payment. The policy makes clear that the "due date for the *first premium* is the Date of Issue" but the due date for subsequent premiums is the "day after the end of the period for which the previous premium was paid" (emphasis added). The policy then goes on to specify that "[c]ontract years and anniversaries will be determined from the Policy Date," and the "Policy Date" is defined as the date "shown in the Schedule, and is the date on which the contract goes into effect." Although the "policy date" shown in the Schedule is January 14—which favors the insurer's interpretation, the "date on which the contract goes into effect" is January 31—which favors Ms. Bonem. Clearly, the "Policy Date" cannot be two different dates; that

ambiguity—entirely the creation of the insurer—must be resolved against the insurer, such that "contract years and anniversaries" would run from January 31, not January 14.[3]

II

I think that Ms. Bonem's interpretation of the policy is the better of the two, but that does not matter. Both parties offer reasonable interpretations of the life insurance contract. We must then interpret the contract in favor of the insured—in this case, in favor of Ms. Bonem. We have repeatedly emphasized that insurance policies are "written by the insurer and any ambiguity is to be resolved against it" (*Greaves v Public Serv. Mult. Ins. Co.*, 5 NY2d 120, 125 [1959]; *Sperling v Great American Indemnity Co.*, 7 NY2d 442 [1960]). In such cases, the ambiguity must be "construed in favor of the insured" (*White v Continental Cas. Co.*, 9 NY3d 264, 267 [2007], citing *United States Fid. & Guar. Co. v Annunziata*, 67 NY2d 229, 232 [1986]).

*Mostow v State Farm Ins. Companies* (88 NY2d 321 [1996]) illustrates that principle well. In *Mostow*, two people were injured in a car accident. The policy under

---

[3] The majority cites *Goldman v Metro. Life Ins. Co.* (5 NY3d 561, 571 [2005]) for its claim that the insurance policy's use of the word "annual" does not create ambiguity even though the insurer's interpretation of the policy would mean that the initial annual policy premium purchased less than a full year of coverage (majority op at 2). *Goldman* is inapposite. In that case, policyholders had the option, clearly spelled out in the policy, of paying at the time of application and obtaining a full year of coverage, or paying after the insurer had accepted the application and receiving coverage from that point. The policyholders in *Goldman* relied on the use of the word "annual" in their agreements to attempt to overcome the plain language; here, the policy plainly distinguishes between the method of determining the due date for the first payment and the method for determining the due date for subsequent payments, and introduces ambiguity as to the latter. We interpret contracts based on the language of the contract at issue, not the language of contracts between some other parties in some prior case.

which they sought coverage contained a liability limit of "$100,000 each person, $300,000 each accident" (*id.* at 323-24). The insurer argued that a $190,000 award to one of the accident victims must be reduced to $100,000 under the per-person limit of the policy. We noted that the policy did not contain any language deeming the $300,000 per accident limit "subject to" the $100,000 per person limit, which made the policy language "susceptible to two reasonable interpretations" (*id.* at 325). Because "ambiguities in an insurance policy should be construed in favor of the insured and against the insurer, [who is] the drafter of the policy language[,]" we held that the construction favoring the injured individuals— allowing the $190,000 award—prevailed (*id.* at 326). We emphasized that the insurer could have avoided the dilemma "had the insurer simply drafted the policy to include the 'subject to' language" used in the Insurance Law (*id.* at 327).

## III

Children dividing a piece of cake often resort to, "you cut, I'll choose," as a way of arriving at as fair a split as possible: the child cutting is given a strong incentive to make the split perfectly even. The doctrine of *contra proferentem* derives from a similar idea: the party drafting a contract knows that ambiguities will be resolved against it, giving it an incentive to write as clear a contract as possible. Children want the cake split evenly; purchasers of life insurance want the terms of coverage unambiguously set out. If a child cuts the cake unevenly, it is fair that the other child gets the bigger piece. Next time, the child will cut more evenly, or perhaps defer the cutting to another child. Next time, the insurer will fix the ambiguity in the contract, so that future purchasers of its insurance will better understand what they have purchased.

Of course, drafting a completely unambiguous insurance contract is harder than halving a piece of cake. But for a business issuing hundreds of thousands of policies of insurance, the cost of paying on an ambiguous contract term is modest when compared to the overall efficiency in rewriting the contract to remove that ambiguity from all future contracts. The doctrine of *contra proferentem* has enjoyed such longstanding and universal adherence because it serves twin purposes: fairness and efficiency. The Court's decision serves neither.

On review of submissions pursuant to section 500.11 of the Rules, order affirmed, with costs, in a memorandum. Chief Judge DiFiore and Judges Garcia, Singas, Cannataro and Troutman concur. Judge Wilson dissents in an opinion, in which Judge Rivera concurs.

Decided February 10, 2022