THE LONDON ASSURANCE Y OVERSEAS INS. AGENCIES, INC., ET AL., peticionarias, *v.* TRIBUNAL SUPERIOR DE PUERTO RICO, SALA DE SAN JUAN, HON. LUIS R. POLO, JUEZ, recurridos.

*Número:* C-66-31     *Resuelto:* 5 de septiembre de 1967

*González & Rodríguez,* abogados de las peticionarias; *Manuel Abreu Castillo,* abogado de la Asociación de Dueños de Mueblerías de Puerto Rico.

Sala Segunda integrada por el Juez Asociado Señor Belaval como Presidente de Sala y los Jueces Asociados Señores Hernández Matos, Santana Becerra y Dávila.

EL JUEZ ASOCIADO SEÑOR BELAVAL emitió la opinión del Tribunal.

El día 31 de agosto de 1959, la London Assurance, a través de sus agentes en Puerto Rico, la Overseas Insurance Agencies, Inc., expidió una póliza a favor de la Asociación de Dueños de Mueblerías de Puerto Rico, a cuya póliza impresa, siguiendo el modelo general de tales instrumentos de seguro, se unió, escrito en maquinilla, una cláusula de extensión de riesgos que especificaba: "Queda entendido y acordado de común acuerdo que esta póliza se extiende para cubrir, sujetos a todas las condiciones y limitaciones del contrato, pérdidas o daños directos causados por ciclón, huracán o tornado, terremoto y erupción volcánica. Queda además entendido y acordado que todas las veces que las palabras 'asegurado' o 'asegurados' aparezcan en esta póliza, quedan sustituidas por las palabras 'miembros asociados' de la Asociación de Dueños de Mueblerías de Puerto Rico, según aparecen nombrados en la lista adjunta que forma parte de esta póliza."

El día 6 de septiembre de 1960 los asegurados sufrieron daños en sus propiedades a consecuencia de las inundaciones causadas por el huracán "Donna" durante ese día, ascendentes a la suma de $19,127.37. Al negarse la peticionaria a pagar dichas pérdidas, la Asociación de Dueños de Mueblerías de Puerto Rico, presentaron todos conjuntamente una acción contra su aseguradora, peticionaria en este recurso.

En la Sala de San Juan del Tribunal Superior de Puerto Rico, las peticionarias presentaron la defensa siguiente: La póliza expedida a la Asociación de Dueños de Mueblerías de Puerto Rico es una que cubre los distintos peligros nombrados, y de no ser así la práctica aceptada, por los aseguradores, comisionados y cortes, se haría necesario incorporar

al contrato las condiciones, restricciones y limitaciones inherentes a cada uno de esos riesgos lo que degeneraría en un contrato tan extenso y complicado que haría su interpretación imposible. Por eso quedó establecida, y reconocida por las cortes, la práctica que en un contrato de esta naturaleza se *mencionan* los riesgos y/o los peligros cubiertos, quedando implícito en que la cubierta en cuanto a cada uno de esos riesgos específicos—huracán (*windstorm*) el que nos ocupa en este caso—está sujeto a las condiciones y exclusiones que en relación con cada uno de los peligros nombrados existen en los contratos básicos de seguros contra esos mismos riesgos o peligros. En cuanto a la cubierta de "huracán" extendida a la Asociación, el contrato básico de seguro que se refiere a ese riesgo, tiene una cláusula de exclusión que dice: "A menos que se estipule lo contrario por escrito añadido a esta póliza esta compañía no será responsable de pérdida causada directa o indirectamente por granizo, turbión, desbordamiento del mar por grandes marejadas, reboso de mar, inundación o marea alta arrastrados o no por el viento."

Por su parte, la Asociación citó los siguientes artículos del Código de Seguros de Puerto Rico: Art. 11.118(1) que dispone: "Ningún convenio que esté en conflicto con el contrato de seguro o que lo enmiende o amplíe será válido a menos que fuere por escrito y se hiciere formar parte de la póliza"; el Art. 11.250 que dispone: "Todo contrato de seguro deberá interpretarse globalmente, a base del conjunto total de sus términos y condiciones, según se expresen en la póliza, o modificado por aditamento, endosos o solicitud adherido a la póliza y que forme parte de ésta." Después de citar dichos artículos, alega: El convenio de las partes se realizó ejercitando ambas su libertad de contratación y aunque dicho contrato se preparó unilateralmente por la Compañía de Seguros, siendo un contrato de los comprendidos entre los contratos de adhesión, expresó la intención de las partes de cubrir los riesgos de huracán. La compañía aseguradora no

adicionó por escrito ni tampoco hizo formar parte de la póliza expedida por ellos ninguna de las cláusulas del contrato típico de huracán. Por el contrario, se limitó a adicionar en maquinilla el párrafo antes incluido. Al así hacerlo extendió la cubierta para el riesgo de huracán en forma limitada únicamente por las cláusulas que aparecen claramente escritas y especificadas en la póliza en cuestión. Una lectura del convenio conocido como el *Inland Marine* en las pólizas denominadas *Installment Sales Floater Policy* demuestra que en su texto no se especifica como riesgo no incluido la cláusula que pretende la parte demandada que quede implícita en esta póliza. La póliza contiene los riesgos no incluidos y están claramente incluidos en la flotadora de ventas a plazos y propiedad arrendada.

Cubre los siguientes riesgos:

(a) Fuego y electricidad.

(b) Colisión (llegar a estar juntos carros apareados no se considerará como colisión) descarrilamiento, vuelco del carruaje únicamente, desplome de puentes, inundaciones (por subir de nivel las aguas) terremoto, ciclón, vendaval o tornado, mientras dichas propiedades se estén transportando por transporte terrestre.

(c) Encalladura, hundimiento, quemadura o colisión, incluyendo los cargos a la gruesa de salvamento por los cuales el asegurado pueda ser responsable legalmente mientras dicha propiedad esté dentro de lanchas o en transporte terrestre en carros o trasbordos.

y en adición a estas cubiertas, está también la cubierta añadida en maquinilla por la Compañía Aseguradora. Por eso cuando se dice en la cláusula motivo de interpretación en este caso que la cláusula se extiende a cubrir "cualquier pérdida directa o daño causados por huracán, sujetas a las otras condiciones del contrato", es el contrato en que ambas partes están conviniendo en ese momento, o sea, la flotadora de ventas a plazos.

Ante estas argumentaciones, la ilustrada Sala sentenciadora llegó a las siguientes conclusiones: "Si la póliza no tuviera ninguna otra disposición en adición a las arriba transcritas, tendríamos necesariamente que concluir que la demandante no tiene derecho a recobrar por los daños alegados bajo los términos del contrato, ya que surge de los autos y del propio memorándum de la demandante que la propiedad alegadamente damnificada por las inundaciones causadas por el huracán Donna se encontraban en distintos locales pertenecientes a los diversos asociados de la demandante en beneficio de los cuales se ha traído esta acción *y no en tránsito*. Sin embargo, al dorso del documento que en parte hemos transcrito, se añadió a maquinilla por la demandada a través de su agente la Overseas Insurance Agencies, Inc., lo siguiente: 'Queda entendido y acordado de común acuerdo que esta póliza se extiende para cubrir, sujetas a todas las condiciones y limitaciones del contrato, pérdidas o daños directos causados por ciclón, terremoto y/o erupción volcánica' . . . . Esta estipulación adicionada al contrato nos produce cierta duda. ¿Es acaso que quiso la aseguradora extender la cubierta contra los riesgos de ciclón, tornado, terremoto, etc., independientemente de que los daños ocurrieran o no mientras la propiedad estaba siendo transportada por tierra? Como quiera que es doctrina de derecho establecida en esta jurisdicción que los contratos (y las pólizas de seguro son un contrato entre la compañía aseguradora y el asegurado), deben interpretarse restrictivamente en contra de quien los redactó y liberalmente a favor de la otra parte, y teniendo conocimiento general de que los contratos de seguro son redactados por las compañías aseguradoras, damos el beneficio de la duda que tenemos a la demandante e interpretamos la póliza en el sentido de que el acuerdo últimamente transcrito tiene el efecto de extender cubierta a la propiedad asegurada, no importa que ésta no se encontrara en tránsito."

■ Estamos conformes con la ilustrada representación de las recurridas, en el sentido, que cuando se dice en la cláusula en maquinilla, añadida al texto impreso, que la póliza se extiende a cubrir pérdidas directas o daños causados por huracán, sujetas a otras condiciones y limitaciones del contrato la referencia al contrato es al que están perfeccionando en este momento las partes, o sea la flotadura de ventas a plazos. En la mente de los contratantes no ha podido estar ningún contrato típico de ciclón o huracán y mucho menos la cláusula de exclusión relacionada con cualquier pérdida causada directa o indirectamente por granizo, turbión, desbordamiento del mar por grandes marejadas, reboso del mar o marea alta arrastrados o no por el viento.

■ El Art. 11.180 del Código de Seguros de Puerto Rico, interesa un contrato de seguro completo en sí mismo, que contenga todo lo acordado entre las partes y que sea por escrito. Se busca no sólo la simplicidad de su redacción sino la sencillez de su forma, cláusulas uniformes de acuerdo con las distintas clases de seguro, aprobadas por el Comisionado de Seguros, significados proverbiales recogidos de un oscuro préstamo con el uso popular, sin aditamentos contradictorios que puedan fomentar una litigación viciosa. Por nuestra parte, en el caso de *Barreras* v. *Santana*, 87 D.P.R. 227 (Rigau) (1963), cita precisa a las págs. 235–236 nos decidimos por una simplificación de las sutilezas en la interpretación y de los refinamientos leguleyos a que hubiesen podido estar sometidos los términos tradicionales de las ciencias del comercio marítimo-terrestre.

■ Las llamadas cláusulas de exclusión habían logrado, hasta hace poco, aminorar las responsabilidades de un asegurador hasta un mínimo incompatible con la salud del crédito. Sobre todo, en esta curiosa amalgama del seguro marítimo-terrestre, una especie de seguro marítimo interior, en el cual se compaginan viejas formas dialectales de los

lobos de mar con los giros lingüísticos mejor atemperados a la metáfora oficial de un idioma de los tigres de la tierra. Ejemplo de esto lo tenemos en las palabras "huracán", "ciclón", tan llenas de sentido en nuestro particular arte de entender los fenómenos de la naturaleza. Decían los antiguos que ha habido ciclones en Puerto Rico que terminaban con un temblor de tierra o con una granizada en el vórtice. Todavía nuestros pleneros hablan de un viento monguito amarrado a la cintura que carga con la mitad de la Isla.

*Debe anularse el auto expedido.*