Negroni Cintrón, Juez Ponente
TEXTO COMPLETO DE LA SENTENCIA
Ponce de León Gun Shop, Inc. ("Gun Shop") acude ante este Tribunal mediante el recurso que nos ocupa para que revoquemos la Sentencia Sumaria Parcial que el tribunal de instancia emitió desestimando en cuanto a la apelada American International Insurance Company of Puerto Rico ("American") la acción que por daños y perjuicios habían instado contra ésta, "Gun Shop", Femando Borges de Jesús, la esposa de éste denominada Fulana de Tal y la Sociedad Legal de Gananciales integrada por estos últimos dos.
American presentó un corto alegato y posteriormente ambas partes sometieron un apéndice *899 conjunto, por lo que estamos en posición de resolver.
El trasfondo fáctico y procesal de la controversia que debemos considerar para resolverla es sencillo. La demanda se encarga de exponer los hechos pertinentes que debemos estimar como ciertos, de la siguiente forma:

"1. El 2 de marzo de 1990, alrededor de las cuatro o cinco de la tarde, el menor de once años de edad Jeffrey J. Lapetina Mafuz se encontraba junto a unos amigos en el negocio conocido como "Gotcha"perteneciente a los co-demandados Femando Borges de Jesús y su esposa Fulana de Tal o a la Sociedad Legal de Gananciales existente entre ellos o perteneciente del [sic] referido negocio a la corporación Ponce de León Gun Shop, Inc. En el referido negocio, el cual radica en la Ave. Ponce de León Núm. 1163 de Río Piedras, San Juan, Puerto Rico, se práctica un juego conocido como Gotcha y/o Survival el cual semeja una guerra, se práctica en grupos y se usan unas pistolas o armas de gas comprimido que disparan balas que contienen pintura.

2.El arma o pistola utilizada en el referido juego, al igual.que un chaleco y un protector de los ojos los proporciona, mediante pago, el negocio antes mencionado.

3.Que mientras el menor de edad, Jeffrey Lapetina Mafuz, prácticaba el juego de Gotcha o Survival Game en el referido negocio su equipo protector de ojos, por no ser el apropiado o el de la correcta medida se le aflojó o se salió (sic) de lugar y una de las balas que le dispararon [sic] le alcanzó y le exploto [sic] en su ojo izquierdo.

4. Que como consecuencia directa del accidente, el referido menor fue atendido de emergencia en el Hospital Auxilio Mutuo donde luego se le practicó cirugía por un oftalmólogo.

5. Que el menor antes relacionado como consecuencia directa del referido accidente, ha pérdido capacidad visual total por su ojo izquierdo; tendrá que ser nuevamente operado y existe la probabilidad de que su ojo se afecte.

6. Que la causa directa del accidente fue la negligencia u omisión de los co-demandados Ponce de León Gun Shop, Inc., haciendo negocio como Gotcha o Survivial [sic] Game, o de Fernando Borges de Jesús y su esposa o la sociedad legal de gananciales existente entre ellos haciendo negocios como Survival Game o Gotcha, al permitir al referido menor practicar el mencionado juego sin la debida supervisión; el haberle proporcionado un equipo protector de ojos deficientes y el no haberle dado las instrucciones de rigor del juego.

7. Que la compañía de Seguros American International Insurance Co. of P.R., para la fecha del accidente mantenía pólizas de responsabilidad pública que cubrían los daños ocasionados en este caso a favor de Fernando Borges de Jesús, o de Fernando Borge de Jesús y su esposa o la sociedad de gananciales existente entre ellos y o [sic] a favor de Ponce de León Gun Shop, Inc., todos haciendo negocio como Gotcha o Survival Game.

8. Que los co-demandantes Leticia Córdova de Mafuz y Pedro Mafuz son los abuelos maternos del mencionado menor accidentado y como consecuencia directa del accidente han sufrido graves daños y perjuicios consistentes en angustias mentales y sufrimientos mentales que estiman en no menor de $150,000.00 hasta el presente, cada uno.

9. Que los co-demandados Lawrence C. Lapetina y Louise C. Lapetina son los abuelos paternos del mencionado menor accidentado y como consecuencia directa del accidente han sufrido graves daños y perjuicios consistentes en angustias y sufrimientos mentales que estiman en no menor de $150,000 00 hasta el presente, cada uno.

10. Angeles Mafuz Córdova y Lawrence C. Lapetina, Jr., son los padres del mencionado menor accidente [sic] y como consecuencia directa del accidente han sufrido graves daños y perjuicios consistentes en angustias y sufrimientos mentales que estiman en no menor de $300,000.00 hasta el presente cada uno.

*900 11. Que los co-demandados John Joseph, Robert Joseph, Michael Anthony, Fernando Luis, Lawrence C., Maria Angeles, Alanix Michael todos de apellidos Lapetina son hermanos del mencionado menor accidentado y como consecuencia directa del accidente han sufrido graces [sic] daños y perjuicios consistentes en angustias y sufrimientos mentales que estimen [sic] en no menor de $200,000.00 hasta el presente, cada uno.

12. Que la co-demandante Antonia Acosta Batista es la empleada doméstica desde que nado [sic] el mencionado menor accidentado y se ocupo [sic] de la crianza y como consecuencia directa del accidente han sufrido graves daños y perjuicios consistentes en angustias y sufrimientos mentales que estiman en no menor de $150,000.00 hasta el presente.

13. Que como consecuencia directa entre el accidente antes relacionado los padres del referido menor han incurrido en más de $600.00 doláres en gastos médicos."

Emplazada, American presentó una Moción al amparo de la Regla 36 de las de Procedimiento Civil, 32 L.P.R.A., Ap. III, solicitando que se desestimara la acción en lo que a ella se refería. En síntesis expuso que no existía controversia en cuanto a que había expedido la póliza número 013-26738 a nombre de los co-demandados Femando L. Borges De Jesús h/n/c Ponce de León Gun Club o Ponce de León Gun Shop o Law Enforcement Security Institute efectiva desde el 25 de octubre de 1987 hasta el 25 de octubre de 1990, titulada "Multi-Peril Policy" y que ésta no ofrecía cubierta a su asegurada para responder por las reclamaciones incluidas en la demanda, pues la póliza excluía a los participantes en las actividades relacionadas con juegos de sobrevivencia, "survival games activity", según el código número 074105 "Hunting on Insured Premises" y de acuerdo al Endoso Número Siete (7). Arguye que por virtud de dicho endoso a la póliza también quedaron excluidos de la cubierta los reclamantes que deriven su reclamación de la del participante. En apoyo de su petición incluyeron una copia de la póliza y una declaración jurada y résumé de un perito en seguros. En la declaración el perito consigna su opinión de que American no le respondía a los demandantes-apelados.
Gun Shop se opuso oportunamente aduciendo en esencia que la póliza de referencia sólo excluía a los participantes y no a los reclamantes.
Sometido el asunto, el tribunal de instancia acogió la posición de American y desestimó las reclamaciones en su contra. Concluyó que la póliza de American excluía la acción de los familiares del menor participante y de la empleada doméstica que crió al menor lesionado, por tratarse de reclamaciones derivadas de la acción de éste que por ser participante de la actividad excluida por el endoso, estaba impedido de reclamarle directamente a American.
Inconforme con este dictamen es que Gun Shop apela ante nos. Señala que "[e]rró el Tribunal Superior, Sala de San Juan [sic] al extender la exclusión de participantes contenida en la póliza a reclamantes que no son participantes."
En sus escritos las partes repiten esencialmente los mismos argumentos que formularon ante instancia. Considerados éstos y después de un cuidadoso análisis y estudio coincidimos con el criterio y dictamen del tribunal apelado.
El artículo 11.250 del Código de Seguros, 26 L.P.R.A. see. 1125, dispone que "[t]odo contrato de seguro deberá interpretarse globalmente, a base del conjunto total de sus términos y condiciones, según se expresen en la póliza y según se hayan ampliado, extendido, o modificado por aditamento, endoso o solicitud adherido a la póliza y que forme parte de ésta."
A tono con el artículo citado, es norma de hermenéutica firmemente establecida que el lenguaje usado en los seguros debe ser interpretado de ordinario en su significado corriente y común, sin ceñirse demasiado al rigor gramatical, sino al uso general y popular de las voces. Morales Garay v. Roldán Coss, 110 D.P.R. _ (1981); Pagán Caraballo v. Silva, 122 D.P.R. 105 (1988). Debe precisarse el sentido o significado que a las palabras de la póliza le daría una persona normal de inteligencia promedio. PFZ Properties, Inc. v. General Accident Insurance Company, P.R. LTD., Op. del 7 de septiembre de 1994, 94 J.T.S. 116.
*901 En relación a las cláusulas de exclusión en las pólizas es también principio regulador que éstas se deben interpretar restrictivamente, de forma tal que se cumpla el propósito de la póliza de proveer protección al asegurado. Toda ambigüedad debe resolverse en favor del asegurado. Pagan Caraballo v. Silva, supra; The London Assurance v. Tribunal Superior, 95 D.P.R. 305 (1967); Barreras v. Santana, 87 D.P.R. 227 (1963).
Esta normativa, sin embargo, no obliga a que se interprete a favor del asegurado una cláusula que claramente y sin ambigüedad le da la razón al asegurador en la controversia en cuestión. González v. Coop. Seguros de Vida de P.R., 117 D.P.R. 659 (1986). Si una cláusula de exclusión aplica claramente a determinada situación, la póliza, en general, no cubre los daños en cuestión, a pesar de las inferencias que parezcan surgir de las demás cláusulas. Meléndez Pinero v. Levitt & Sons of P.R., Op. del 13 de diciembre de 1991, 91 JTS 95. La amplitud de la cobertura de la póliza se mide realmente a base de cuáles riesgos permanecen garantizados después de determinarse cuáles son las exclusiones. En su aprobación, cada exclusión reduce o circunscribe los límites verdaderos de la garantía amplia que concede el acuerdo general de cubierta de la póliza. Meléndez Piñero v. Levitt & Sons of P.R., supra. Ahora bien, como el propósito del contrato de seguros es la indemnización y la protección en caso de producirse un suceso incierto previsto en el contrato, las cláusulas de exclusión de responsabilidad se interpretan restrictivamente; las dudas son resueltas de modo que se cumpla con el propósito de la póliza. PFZ Properties, Inc. v. General Accident Insurance Company, P.R. LTD., supra, a la página 121.
Con la perspectiva jurídica antes expuesta examinemos la controversia que nos ocupa. La póliza extendida por American a su asegurado es de las comúnmente conocidas en inglés como "Multi-Peril Policy". Esta le ofrece cubierta al asegurado por múltiples riesgos enumerados en el contrato de seguros y le garantiza que la aseguradora responderá por los daños que pueda causarle a terceros. Mediante el Endoso Número 6 de la póliza, efectivo el 19 de mayo de 1989, las partes acordaron excluir a los participantes de los juegos denominados "Survival Games" al disponer en inglés y en lo pertinente que los "[pjarticipants of the Survival Games are excluded as per Form GL-2101 attached hereto." La referida forma vino a ser el Endoso Número 7 de la póliza. Esta dispuso en lo pertinente y en inglés lo siguiente:

"It is agreed that with respect to operations described below or designated in the policy as subject to this endorsement, the insurance does not apply to bodily injury to any person while practicing for or participating in any contest or exhibition of an athletic or sports nature sponsored by the named insured. Description of Operations: Survival Games Activities Rated as: 07410s- Hunting on insureds premises."

Como puede apreciarse a simple vista, la citada cláusula no es una confusa o ambigua. Expresa y claramente excluye de la cubierta general de la póliza a los participantes de los juegos "survival games" que auspiciara el asegurado. La controversia entre las partes surge porque American esencialmente sostiene que la palabra "participante" también incluye a aquellas personas que pudieran derivar su reclamación de los daños físicos que, a su vez, pudieran recibir la persona que practique o participe en el juego excluido. Tiene razón.
Una lectura de la totalidad de la póliza revela que el evidente propósito de la cláusula de referencia, con vista a la totalidad de la póliza, es anunciar e informar claramente y sin ambages que el riesgo que representa el juego está excluido de la garantía que ofrece American. Este es el sentido lógico y razonable de los términos de la póliza y de la exclusión de referencia. Es el significado que sin dificultad armoniza indefectiblemente con el propósito de la póliza. PFZ Properties, Inc. v. General Accident Insurance Company, P.R. LTD., supra. Ello así, la tesis que proponen los apelantes es inaceptable y constituye un contrasentido de lo que la póliza y su exclusión pretenden. A igual resultado llegamos si consideramos los principios generales del derecho de daños.
Al tenor del Artículo 1802 del Código Civil, 31 L.P.R.A. see. 5141, todo perjuicio material o moral da lugar a reparación si concurren tres requisitos o elementos: (1) se establece la realidad del daño sufrido; (2) existe un nexo causal entre el daño y la acción u omisión de otra persona, y (3) dicho acto u omisión es culposo o negligente. Santini Rivera v. Serv. Air, Inc. et al, (1994). Sin embargo el perjuicio causado a una persona por la negligencia de otro, frecuentemente repercute indirectamente *902 en terceros, independientemente de los daños que la lesión le provoca a la víctima inicial o principal. Estos terceros pueden sufrir daños patrimoniales si son personas atendidas por el lesionado principal como los son, a modo de ejemplo los hijos, padres, hermanos o abuelos, entre otros. También pueden sufrir daños morales las personas vinculadas con el lesionado principal por lazos de parentesco, afecto y cariño. En tales casos, cada uno de estos terceros adquiere una acción separada, en parte, de la del lesionado principal contra el causante, cuya fuente de responsabilidad es precisamente el perjuicio particular y personal sufrido por cada uno de los terceros. Véase: Hernández v. Fournier, 80 D.P.R. 936 (1957); Santos Briz, Jaime, La Responsabilidad Civil, 7ma. Ed., Editorial Montecorvo, S.A., Vol. I, págs. 221-243.
Ello no obstante, las acciones de los terceros para reclamar indemnización quedan sujetas a lo dispuesto por el Artículo 1802 del Código Civil, supra; Hernández v. Fournier, supra. Ello implica necesariamente que la acción de estos terceros, aunque independiente o individual en parte, dependerá de que una parte llamada a resarcir los daños fuese responsable de resarcir al lesionado principal por los daños sufridos por éste. A tono con lo preceptuado en el artículo 1802 de Código Civil, supra, no puede concebirse que una parte llamada a resarcir no le sea responsable al lesionado principal por no existir fuente de responsabilidad alguna que lo obligue, pero que sí lo sea ante aquellos terceros que sufren daños indirectos y derivan sus reclamaciones individuales de forma contingente del lesionado principal.
En el caso que nos ocupa, resulta totalmente contradictorio que por un lado y en virtud de la exclusión expuesta en los Endosos 6 y 7 de la póliza expresamente se exima de responsabilidad a American al excluir de la cubierta extendida el riesgo relacionado con los juegos "survival games", pero que por otro American sí le sea responsable a los padres, abuelos, hermanos y empleada doméstica del menor lesionado por los daños morales que estos sufrieron como consecuencia de la alegada ilicitud de la asegurada de American, a pesar que el menor y lesionado principal está impedido de reclamarle. Tal tesis no sólo atenta contra el claro propósito de la póliza, si no que es contraria al orden en que en tales circunstancias se impone la responsabilidad al tenor del Artículo 1802 del Código Civil, supra.
En tales circunstancias ningún error cometió el tribunal de instancia al desestimar la acción contra American. No existiendo controversia alguna sobre los hechos pertinentes y necesarios para adjudicar la controversia ante él, tratándose de una controversia esencialmente de derecho y que el promovente tiene derecho al remedio que solicita, dicho foro podía disponer sumariamente de la desestimación solicitada. Consejo de Titulares del Condominio Parkside v. M.G.I.C. Financial Corp., Op. del 13 de junio de 1991, 91 J.T.S. 53; Tello Rivera v. Eastern Airlines, 119 D.P.R. 83 (1987); Presiding Bishop CJC of LDS v. Purcell, 117 D.P.R. 714 (1986).
Por los fundamentos antes expuesto se dicta sentencia confirmando la apelada que desestimó la demanda en cuanto a American.
Lo acuerda el Tribunal y lo certifica la Secretaria General.
Aida I. Oquendo Graulau
Secretaria General